# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| DATACLOUD TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EXTREME NETWORKS, INC.,<br><br>Defendant. | CIVIL ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

Plaintiff DataCloud Technologies, LLC (hereinafter, "Plaintiff" or "DataCloud"), by and through its undersigned counsel, files this Complaint for Patent Infringement against Defendant Extreme Networks, Inc. (hereinafter, "Defendant" or "Extreme") as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Patents-in-Suit"), copies of which are attached hereto as **Exhibit A, Exhibit B, Exhibit C,** and **Exhibit D**, respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 6,560,613 | Disambiguating File Descriptors |
| B. | 6,651,063 | Data Organization And Management System And Method |
| C. | 8,370,457 | Network Communication Through A Virtual Domain |
| D. | 8,762,498 | Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain |

2. Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3. DataCloud is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, Georgia, 30009 (Fulton County).

4. Based upon public information, Extreme is a corporation duly organized and existing under the laws of the state of Delaware since January 7, 1999.

5. Based upon public information, Extreme has its principal place of business located at 6480 Via Del Oro, San Jose, California 95119 (Santa Clara County).

6. Defendant may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

7. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

8. The Court has personal jurisdiction over Extreme because: Defendant has minimum contacts within the State of Delaware and in this District; Defendant has purposefully availed itself of the privileges of conducting business in the State of Delaware and in this District; Defendant has sought protection and benefit from the laws of the State of Delaware and is incorporated there; Defendant regularly conducts business within the State of Delaware and within this District, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Delaware and in this District.

9. More specifically, Extreme, directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services in the United States, the State of Delaware, and in this District.

10. Based upon public information, Extreme solicits customers in the State of Delaware and in this District and has many paying customers who are residents of the State of Delaware and this District and who use its products in the State of Delaware and in this District. Extreme is also incorporated in the State of Delaware and in this District.

11. Venue is proper pursuant to 28 U.S.C. §1400(b) because Extreme resides in the District of Delaware because of its formation under the laws of Delaware.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Extreme resides in the District of Delaware because of its formation under the laws of Delaware, which subjects it to the personal jurisdiction of this Court.

## BACKGROUND INFORMATION

13. The Patents-in-Suit were duly and legally issued by the United States Patent and Trademark Office (hereinafter, the "USPTO") after full and fair examinations.

14. Plaintiff is the owner of the Patents-in-Suit, and possesses all right, title and interest in the Patents-in-Suit including the right to enforce the Patents-in-Suit, the right to license the Patents-in-Suit, and the right to sue Defendant for infringement and recover past damages.

15. Plaintiff has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

16. Plaintiff does not sell, offer to sell, make, or use any products itself, so it does not have any obligation to mark any of its own products under 35 U.S.C. § 287.

17. By letter dated April 16, 2020, DataCloud's licensing agent sent Defendant a letter in which it identified DataCloud's patent portfolio, which includes each of the Patents-in-Suit. *See* **Exhibit E** (hereinafter, the "Notice Letter").

**DEFENDANT'S PRODUCTS AND SERVICES**

18. Based upon public information, Extreme owns, operates, advertises, and/or controls the website www.extremenetworks.com through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services. *See* **Exhibit F.**

19. Based upon public information, Defendant provides sales information, training and educational information, for its products. *See* **Exhibit G.**

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,560,613**

20. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

21. U.S. Patent No. 6,560,613 (hereinafter, the "'613 Patent"), was issued on May 6, 2003 after full and fair examination by the USPTO of Application No. 09/500,212 which was filed on February 8, 2000. *See* Ex. A. A Certificate of Correction was issued on August 26, 2003. *See id.*

22. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '613 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "SLX Insight Architecture" which "helps improve operational efficiency and troubleshooting by providing an open guest VM in a KVM environment to run third-party monitoring and analytics applications on the switch or router coupled with an internal analytics path and high-performance data streaming options." *See* **Exhibit H**.

23. Upon information and belief, the SLX Insight Architecture meets each and every element of at least Claim 1 of the '613 Patent, either literally or equivalently.

24. Based upon public information, the SLX Insight Architecture has infringed one or more claims of the '613 Patent, including Claim 1, because it provides a method for disambiguating file descriptors in a computer system through a process which intercepts the

system calls that identify file descriptors and the system calls that create copies of one or more file descriptors, stores one or more file type indicators for each file descriptor and each file descriptor copy, and upon an attempt to access a file based upon a file descriptor, determines what file type is associated with the file descriptor based on a review of the stored file type indicators.  QEMU and KVM employ disambiguation of file descriptors (files/sockets/pipes) that are used in shadowed I/O system call routines by intercepting them, storing related indicators (*e.g.*, reference to images), and examining those stored indicators to determine the associated file type.

25. To the extent that Defendant is not the only direct infringer of one or more claims of the '613 Patent, it instructs its customers on how to use the SLX Insight Architecture in ways that infringe one or more claims of the '613 Patent through its support and sales activities.  *See* Ex**.** G.

26. Based upon public information, Defendant's customers use its SLX Insight Architecture in such a way that infringes one or more claims of the '613 Patent.  *See* Ex**.** H.

27. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

28. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,651,063

29. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

30. U.S. Patent No. 6,651,063 (hereinafter, the "'063 Patent"), was issued on November 18, 2003 after full and fair examination by the USPTO of Application No. 09/493,911

which was filed on January 28, 2000. *See* Ex. B. A Certificate of Correction was issued on February 3, 2004. *See id.*

31. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '063 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "Management Center" which provides a "pragmatic path to automation based on multi-vendor architectures" to allow "granular visibility and real-time analytics, to make data-based business decisions." *See* **Exhibit I**.

32. Upon information and belief, the Management Center meets each and every element of at least Claim 4 of the '063 Patent, either literally or equivalently.

33. Based upon public information, the Management Center has infringed one or more claims of the '063 Patent, including Claim 4, because it provides a method for storing and controlled access of data in a repository by storing information in an "information pack" (uploading firmware to servers/saving image files) to which is associated the address of a data repository, a "category identifier" (*e.g.*, "Device Type"), and a "provider identifier" (ExtremeXOS). The information pack is sent to the specified data repository and stored there in a location reserved for the specified category identifier that is specifically created for the information pack (*e.g.*, image type of "boot PROM" or "firmware" is reserved information for the category of "Image type", corresponding to category identifier of "Device Type"), and a "custom category identifier" (*e.g.*, IMG: 30.1.1.4) is assigned to the information pack. The custom category identifier is subsequently used to identify other information packs that should be stored in the same location based on matching category identifiers (*e.g.*, "custom category identifier" can be the digital signature for the "Certified Version").

34. To the extent that Defendant is not the only direct infringer of one or more claims of the '063 Patent, it instructs its customers on how to use the Management Center in ways that infringe one or more claims of the '063 Patent through its support and sales activities. *See* Ex. G.

35. Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '063 Patent. *See* Ex**.** I.

36. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

37. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,370,457

38. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

39. U.S. Patent No. 8,370,457 (hereinafter, the "'457 Patent"), was issued on February 5, 2013 after full and fair examination by the USPTO of Application No. 11/717,911 which was filed on March 13, 2007. *See* Ex. C. A Certificate of Correction was issued on March 18, 2014. *See id.*

40. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '457 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "ExtremeSwitching™" switches (such as the X435 series) which provide a "comprehensive Layer 2 switching, static routing, advanced PoE, role-based policy and comprehensive security services" to provide "cost-effective Ethernet connectivity." *See* **Exhibit**

**J**.

41. Upon information and belief, the ExtremeSwitching™ switches meet each and every element of at least Claim 9 of the '457 Patent, either literally or equivalently.

42. Based upon public information, the ExtremeSwitching™ switches have infringed one or more claims of the '457 Patent, including Claim 9, because they provide a system of hardware and software (capable of creating two VLANs on a switch that can communicate with each other) that is configured to control access to a client IP address (IP address on a PC on port 2 configuration) by requiring an established combination of a destination IP address (IP address on a PC on port 2 configuration) and a forwarder IP address (*e.g.,* default gateway) be included in the request to access the client IP address where each of the three IP addresses is different from the other two (*e.g.,* IP Address for a PC on a port 1 configuration, IP address for a PC on port 2 configuration, and a default gateway).

43. To the extent that Defendant is not the only direct infringer of one or more claims of the '457 Patent, it instructs its customers on how to use the ExtremeSwitching™ switches in ways that infringe one or more claims of the '457 Patent through its support and sales activities. *See* Ex. G.

44. Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '457 Patent. *See* Ex**.** J**.**

45. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

46. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court

under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,762,498

47. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

48. U.S. Patent No. 8,762,498 (hereinafter, the "'498 Patent"), was issued on June 24, 2014 after full and fair examination by the USPTO of Application No. 13/731,731 which was filed on December 31, 2012. *See* Ex. D.

49. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '498 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "ExtremeCloud™" subscription service which provides a "a resilient and scalable cloud-based network management solution" to allow "IT organizations to deliver exceptional wireless experiences across multiple locations, without constant manual interventions" ("ExtremeCloud Subscription Service") *See* **Exhibit K**.

50. Upon information and belief, the ExtremeCloud Subscription Service meets each and every element of at least Claim 1 of the '498 Patent, either literally or equivalently.

51. Based upon public information, the ExtremeCloud Subscription Service has infringed one or more claims of the '498 Patent, including Claim 1, because it provides a system of hardware and software that is configured to respond to a request for data by identifying a virtual namespace destination IP address (*e.g.*, www.ezcloudx.com) from a selection of categories (*e.g.*, ezcloudx.com, api.ezcloudx.com, radius.ezcloudx.com, sp.ezcloudx.com) that is related to the virtual namespace destination address (*e.g.*, the category of "ezcloudx.com" is related to the virtual namespace destination address of "www.ezcloudx.com") to determine a device with a specific forwarder IP address and instruct it to send the request for data to the destination IP address (*e.g.*, "www.ezcloudx.com" will operate with a first server and first

destination IP address, "radius.excloudx.com" will operate with a second server and second destination IP address, etc.) .

52. To the extent that Defendant is not the only direct infringer of one or more claims of the '498 Patent, it instructs its customers on how to use the ExtremeCloud Subscription Service in ways that infringe one or more claims of the '498 Patent through its support and sales activities. *See* Ex. G.

53. Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '498 Patent. *See* Ex**.** K**.**

54. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

55. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

56. Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

57. Plaintiff respectfully requests the following relief:

   A. An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by Extreme;

   B. An adjudication that Extreme has induced infringement of one or more claims of the Patents-in-Suit based upon pre-suit knowledge of the Patents-in-Suit;

   C. An award of damages to be paid by Extreme adequate to compensate Plaintiff for Extreme's past infringement, including interest, costs, and disbursements

    as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Extreme's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

D. That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

E. Any further relief that this Court deems just and proper.

Dated: June 5, 2020                    Respectfully submitted,

**Stamoulis & Weinblatt, LLC**

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. West Street Third Floor
Wilmington, Delaware 19801
Telephone: (302) 999-1540
Email: stamoulis@swdelaw.com
Email: weinblatt@swdelaw.com
***Attorneys for Plaintiff DataCloud Technologies, LLC***

*Of Counsel*
James F. McDonough, III (Bar No. 117088, GA)
Jonathan R. Miller (Bar No. 507179, GA)
Travis E. Lynch (Bar No. 162373, GA)
**HENINGER GARRISON DAVIS, LLC**
3621Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869, -0863, -0867
Facsimile: (205) 547-5502, -5506, -5515
Email: jmcdonough@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com

**LIST OF EXHIBITS**
    A. U.S. Patent No. 6,560,613
    B. U.S. Patent No. 6,651,063
    C. U.S. Patent No. 8,370,457
    D. U.S. Patent No. 8,762,498
    E. Letter dated April 16, 2020 from DataCloud's Licensing Agent
    F. Webpage Describing Products Offered
    G. Webpage Describing Support for Products
    H. SLX Insight Architecture
    I. Data Sheet: Extreme Management Center
    J. Data Sheet: ExtremeSwitching™ X435 Series
    K. Data Sheet: ExtremeCloud™ (excerpt)