**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| DATACLOUD TECHNOLOGIES, LLC, <br>        Plaintiff, <br><br> v. <br><br> EXTREME NETWORKS, INC., <br>        Defendant. | CIVIL ACTION NO. 1:20-cv-00764-LPS <br><br> **Judge Leonard P. Stark** |

~~ORIGINAL~~FIRST AMENDED COMPLAINT

Plaintiff DataCloud Technologies, LLC (hereinafter, "Plaintiff" or "DataCloud"), by and through its undersigned counsel, files this First Amended Complaint for Patent Infringement against Defendant Extreme Networks, Inc. (hereinafter, "Defendant" or "Extreme") as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Patents-in-Suit"), copies of which are attached hereto as **Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit L, Exhibit M, Exhibit N,** and **Exhibit ~~D~~O**, respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 6,560,613 | Disambiguating File Descriptors |
| B. | 6,651,063 | Data Organization And Management System And Method |
| C. | 8,370,457 | Network Communication Through A Virtual Domain |
| D. | 8,762,498 | Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain |

| | | |
|---|---|---|
| L. | 7,139,780 | System And Method For Synchronizing Files In Multiple Nodes |
| M. | 7,398,298 | Remote Access And Retrieval Of Electronic Files |
| N. | 7,469,405 | System And Method For Scheduling Execution Of Cross-Platform Computer Processes |

| O. | 8,156,499 | Methods, Systems And Articles Of Manufacture For Scheduling Execution Of Programs On Computers Having Different Operating Systems |
|---|---|---|

2.     Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.     DataCloud is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, Georgia, 30009 (Fulton County).

4.     Based upon public information, Extreme is a corporation duly organized and existing under the laws of the state of Delaware since January 7, 1999.

5.     Based upon public information, Extreme has its principal place of business located at 6480 Via Del Oro, San Jose, California 95119 (Santa Clara County).

6.     Defendant may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

7.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

8.     The Court has personal jurisdiction over Extreme because: Defendant has minimum contacts within the State of Delaware and in this District; Defendant has purposefully availed itself of the privileges of conducting business in the State of Delaware and in this District; Defendant has sought protection and benefit from the laws of the State of Delaware and is incorporated there; Defendant regularly conducts business within the State of Delaware and within this District, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Delaware and in this District.

9.      More specifically, Extreme, directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services in the United States, the State of Delaware, and in this District.

10.     Based upon public information, Extreme solicits customers in the State of Delaware and in this District and has many paying customers who are residents of the State of Delaware and this District and who use its products in the State of Delaware and in this District.  Extreme is also incorporated in the State of Delaware and in this District.

11.     Venue is proper pursuant to 28 U.S.C. §1400(b) because Extreme resides in the District of Delaware because of its formation under the laws of Delaware.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Extreme resides in the District of Delaware because of its formation under the laws of Delaware, which subjects it to the personal jurisdiction of this Court.

## BACKGROUND INFORMATION

13.     The Patents-in-Suit were duly and legally issued by the United States Patent and Trademark Office (hereinafter, the "USPTO") after full and fair examinations.

14.     Plaintiff is the owner of the Patents-in-Suit, and possesses all right, title and interest in the Patents-in-Suit including the right to enforce the Patents-in-Suit, the right to license the Patents-in-Suit, and the right to sue Defendant for infringement and recover past damages.

15.     Plaintiff has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

16.     Plaintiff does not sell, offer to sell, make, or use any products itself, so it does not have any obligation to mark any of its own products under 35 U.S.C. § 287.

17.     By letter dated April 16, 2020, DataCloud's licensing agent sent Defendant a letter in which it identified DataCloud's patent portfolio, which includes each of the Patents-in-Suit.  *See*

**Exhibit E** (hereinafter, the "Notice Letter").

18.     By way of the original complaint in this matter, DataCloud put Defendant on notice of its infringement of US Patent Nos. 6,560,613, 6,651,063, 8,370,457, and 8,762,498.  DataCloud also provided Defendant with a chart showing how it infringed each of these patents.

19.     On September 9, 2020, DataCloud put Defendant on notice of its infringement of US Patent No. 7,398,298 by providing Defendant with a chart showing how it infringed, and Defendant did not cease to infringe and now willfully infringes the patent.

20.     On September 17, 2020, DataCloud put Defendant on notice of its infringement of US Patent No. 8,156,499 by providing Defendant with a chart showing how it infringed, and Defendant did not cease to infringe and now willfully infringes the patent.

21.     On September 22, 2020, DataCloud put Defendant on notice of its infringement of US Patent No. 7,469,405 by providing Defendant with a chart showing how it infringed, and Defendant did not cease to infringe and now willfully infringes the patent.

22.     On October 8, 2020, DataCloud put Defendant on notice of its infringement of US Patent No. 7,139,780 by providing Defendant with a chart showing how it infringed, and Defendant did not cease to infringe and now willfully infringes the patent.

## DEFENDANT'S PRODUCTS AND SERVICES

~~18.~~23.  Based upon public information, Extreme owns, operates, advertises, and/or controls the website www.extremenetworks.com through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.  *See* **Exhibit F.**

~~19.~~24.  Based upon public information, Defendant provides sales information, training and educational information, for its products.  *See* **Exhibit G.**

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,560,613

~~20.~~25.  Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

21.26.  U.S. Patent No. 6,560,613 (hereinafter, the "'613 Patent"), was issued on May 6, 2003 after full and fair examination by the USPTO of Application No. 09/500,212 which was filed on February 8, 2000.  *See* Ex. A.  A Certificate of Correction was issued on August 26, 2003.  *See id.*

22.27.  Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '613 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "SLX Insight Architecture" which "helps improve operational efficiency and troubleshooting by providing an open guest VM in a KVM environment to run third-party monitoring and analytics applications on the switch or router coupled with an internal analytics path and high-performance data streaming options."  *See* **Exhibit H**.

23.28.  Upon information and belief, the SLX Insight Architecture meets each and every element of at least Claim 1 of the '613 Patent, either literally or equivalently.

24.29.  Based upon public information, the SLX Insight Architecture has infringed one or more claims of the '613 Patent, including Claim 1, because it provides a method for disambiguating file descriptors in a computer system through a process which intercepts the system calls that identify file descriptors and the system calls that create copies of one or more file descriptors, stores one or more file type indicators for each file descriptor and each file descriptor copy, and upon an attempt to access a file based upon a file descriptor, determines what file type is associated with the file descriptor based on a review of the stored file type indicators.  QEMU and KVM employ disambiguation of file descriptors (files/sockets/pipes) that are used in shadowed I/O system call routines by intercepting them, storing related indicators (*e.g.*, reference to images), and examining those stored indicators to determine the associated file type.

~~25.      To the extent that Defendant is not the only direct infringer of one or more claims of the '613 Patent, it instructs its customers on how to use the SLX Insight Architecture in ways that infringe one or more claims of the '613 Patent through its support and sales activities.  *See* Ex. G.~~

~~26.      Based upon public information, Defendant's customers use its SLX Insight Architecture in such a way that infringes one or more claims of the '613 Patent.  *See* Ex. H.~~

~~27.~~30.  Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

~~28.~~31.  Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## <u>COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,651,063</u>

~~29.~~32.  Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

~~30.~~33.  U.S. Patent No. 6,651,063 (hereinafter, the "'063 Patent"), was issued on November 18, 2003 after full and fair examination by the USPTO of Application No. 09/493,911 which was filed on January 28, 2000.  *See* Ex. B.  A Certificate of Correction was issued on February 3, 2004.  *See id.*

~~31.~~34.  Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '063 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "Management Center" which provides a "pragmatic path to automation based on multi-vendor architectures" to allow "granular visibility and real-time analytics, to make data-based business decisions."  *See* **Exhibit I**.

32.35.  Upon information and belief, the Management Center meets each and every element of at least Claim 4 of the '063 Patent, either literally or equivalently.

33.36.  Based upon public information, the Management Center has infringed one or more claims of the '063 Patent, including Claim 4, because it provides a method for storing and controlled access of data in a repository by storing information in an "information pack" (uploading firmware to servers/saving image files) to which is associated the address of a data repository, a "category identifier" (*e.g.*, "Device Type"), and a "provider identifier" (ExtremeXOS).  The information pack is sent to the specified data repository and stored there in a location reserved for the specified category identifier that is specifically created for the information pack (*e.g.*, image type of "boot PROM" or "firmware" is reserved information for the category of "Image type", corresponding to category identifier of "Device Type"), and a "custom category identifier" (*e.g.*, IMG: 30.1.1.4) is assigned to the information pack.  The custom category identifier is subsequently used to identify other information packs that should be stored in the same location based on matching category identifiers (*e.g.*, "custom category identifier" can be the digital signature for the "Certified Version").

34.    To the extent that Defendant is not the only direct infringer of one or more claims of the '063 Patent, it instructs its customers on how to use the Management Center in ways that infringe one or more claims of the '063 Patent through its support and sales activities.  *See* Ex. G.

35.    Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '063 Patent.  *See* Ex. I.

36.37.  Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

37.38.  Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as

a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,370,457**

38.39.  Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

39.40.  U.S. Patent No. 8,370,457 (hereinafter, the "'457 Patent"), was issued on February 5, 2013 after full and fair examination by the USPTO of Application No. 11/717,911 which was filed on March 13, 2007.  *See* Ex. C.  A Certificate of Correction was issued on March 18, 2014. *See id.*

40.41.  Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '457 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "ExtremeSwitching™" switches (such as the X435 series) which provide a "comprehensive Layer 2 switching, static routing, advanced PoE, role-based policy and comprehensive security services" to provide "cost-effective Ethernet connectivity."  *See* **Exhibit J**.

41.42.  Upon information and belief, the ExtremeSwitching™ switches meet each and every element of at least Claim 9 of the '457 Patent, either literally or equivalently.

42.43.  Based upon public information, the ExtremeSwitching™ switches have infringed one or more claims of the '457 Patent, including Claim 9, because they provide a system of hardware and software (capable of creating two VLANs on a switch that can communicate with each other) that is configured to control access to a client IP address (IP address on a PC on port 2 configuration) by requiring an established combination of a destination IP address (IP address on a PC on port 2 configuration) and a forwarder IP address (*e.g.,* default gateway) be included in the

request to access the client IP address where each of the three IP addresses is different from the other two (*e.g.*, IP Address for a PC on a port 1 configuration, IP address for a PC on port 2 configuration, and a default gateway).

43.1.   To the extent that Defendant is not the only direct infringer of one or more claims of the '457 Patent, it instructs its customers on how to use the ExtremeSwitching™ switches in ways that infringe one or more claims of the '457 Patent through its support and sales activities. *See* Ex. G.

44.   Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '457 Patent.  *See* Ex. J.

45.44.  Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

46.45.  Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,762,498**

47.46.  Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

48.47.  U.S. Patent No. 8,762,498 (hereinafter, the "'498 Patent"), was issued on June 24, 2014 after full and fair examination by the USPTO of Application No. 13/731,731 which was filed on December 31, 2012.  *See* Ex. D.

49.48.  Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '498 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "ExtremeCloud™" subscription service which provides a "a resilient and scalable

cloud-based network management solution" to allow "IT organizations to deliver exceptional wireless experiences across multiple locations, without constant manual interventions" ("ExtremeCloud Subscription Service")  *See* **Exhibit K**.

50.49.  Upon information and belief, the ExtremeCloud Subscription Service meets each and every element of at least Claim 1 of the '498 Patent, either literally or equivalently.

51.50.  Based upon public information, the ExtremeCloud Subscription Service has infringed one or more claims of the '498 Patent, including Claim 1, because it provides a system of hardware and software that is configured to respond to a request for data by identifying a virtual namespace destination IP address (*e.g.*, www.ezcloudx.com) from a selection of categories (*e.g.*, ezcloudx.com, api.ezcloudx.com, radius.ezcloudx.com, sp.ezcloudx.com) that is related to the virtual namespace destination address (*e.g.*, the category of "ezcloudx.com" is related to the virtual namespace destination address of "www.ezcloudx.com") to determine a device with a specific forwarder IP address and instruct it to send the request for data to the destination IP address (*e.g.*, "www.ezcloudx.com" will operate with a first server and first destination IP address, "radius.excloudx.com" will operate with a second server and second destination IP address, *etc*.).

51.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

52.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,139,780

53.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

54.     U.S. Patent No. 7,139,780 (hereinafter, the "'780 Patent"), was issued on

November 21, 2006 after full and fair examination by the USPTO of Application No. 10/335,516 which was filed on December 30, 2002. *See* Ex. L.

55.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed and continues to infringe one or more claims of the '780 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "Management Center" which provides "A Better Way to Manage your Entire Network" by providing a "single pane of glass, which reduces data center administration and offers you the full view of the network, enables embedded data center fabric automation and delivers cross domain automation." *See* **Exhibit P**; Ex. I.

56.     Upon information and belief, the Management Center meets each and every element of at least Claim 1 of the '780 Patent, either literally or equivalently.

57.     Based upon public information, Defendant has infringed and continues to infringe one or more claims of the '780 Patent, including Claim 1, because it provides a method for synchronizing files between a central node and local nodes, each of which consists of a file server with a database and an application to allow for automatic updates to firmware,  Specifically, Defendant does so thorough at least the Management Center's automatic provision of firmware updates from a central database (Management Information Base (MIB)'s hierarchical database and Extreme SLX-OS) and distribution of those firmware updates to all nodes/devices (including, but not limited to, on Extreme SLX Routers and Switches) that need the updates.

58.     Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '780 Patent.  *See* Ex**.** I, Ex. P.

59.     Based upon public information, Defendant has intentionally induced and continues to induce infringement of one or more claims of the '780 Patent in this District and elsewhere in

the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Defendant's customers to use Management Center in an infringing manner.

52.60.   To the extent that Defendant is not the only direct infringer of one or more claims of the '498'780 Patent, it instructs its customers on how to use the ExtremeCloud Subscription ServiceManagement Center in ways that infringe one or more claims of the '498'780 Patent through its support and sales activities.  *See* Ex. G.

61.    Despite knowledge of the '780 Patent as early as the date of its receipt of the Notice Letter (Ex. E), Defendant, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes one or more claims of the '780 Patent.  Based upon public information, the provision of and sale of Management Center is a source of revenue and a business focus for Defendant.  *See* Ex. P.

62.    Based upon public information, Defendant specifically intends its customers to use its products and services in such a way that infringes one or more claims of the '780 Patent by, at a minimum, providing and supporting Management Center and instructing its customers on how to use them in an infringing manner, at least through information available on Defendant's website including information brochures, promotional material, and contact information.  *See* Ex**.** P.

63.    Based upon public information, Defendant knew that its actions, including, but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using Management Center.

64.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

65.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,398,298**

66.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

67.     U.S. Patent No. 7,398,298 (hereinafter, the "'298 Patent"), was issued on July 8, 2008 after full and fair examination by the USPTO of Application No. 11/690,803 which was filed on March 23, 2007. *See* Ex. M.

68.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed and continues to infringe one or more claims of the '298 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "Management Center" which provides the user with the ability to "upload firmware and boot PROM images… and assign them to devices on your network." *See* **Exhibit Q**. Management Center enables the user to "[a]utomatically roll-out consistent policies and automated configuration and compliance monitoring for users and devices." *See* Ex. I.

69.     Upon information and belief, the Management Center meets each and every element of at least Claim 1 of the '298 Patent, either literally or equivalently.

70.     Based upon public information, Defendant has infringed and continues to infringe one or more claims of the '298 Patent, including Claim 1, because it provides a system of hardware and software (the Management Center and Extreme hardware devices, including Extreme routers and switches) that is configured to process requests for data (for instance firmware) from remote data repositories (including the Management Center Server) only if the requestor's profile (Management Center "Users") matches an entry in a profile list (controlled by Management

Center's administrator users and administrator functions) that contains information about the data and its repository (including, for instance, information regarding firmware and device images).

53.71.  Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '498'298 Patent.  *See* Ex**.** K.Q

72.     Based upon public information, Defendant has intentionally induced and continues to induce infringement of one or more claims of the '298 Patent in this District and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Defendant's customers to use Management Center in an infringing manner.

73.     To the extent that Defendant is not the only direct infringer of one or more claims of the '298 Patent, it instructs its customers on how to use the Management Center in ways that infringe one or more claims of the '298 Patent through its support and sales activities.  *See* Ex. G.

74.     Despite knowledge of the '298 Patent as early as the date of its receipt of the Notice Letter (Ex. E), Defendant, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes one or more claims of the '298 Patent.  Based upon public information, the provision of and sale of Management Center is a source of revenue and a business focus for Defendant.  *See* Ex. P, Ex. Q.

75.     Based upon public information, Defendant specifically intends its customers to use its products and services in such a way that infringes one or more claims of the '298 Patent by, at a minimum, providing and supporting Management Center and instructing its customers on how to use them in an infringing manner, at least through information available on Defendant's website including information brochures, promotional material, and contact information.  *See* Ex. Q.

76.     Based upon public information, Defendant knew that its actions, including, but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using Management Center.

77.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

78.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,469,405**

79.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

80.     U.S. Patent No. 7,469,405 (hereinafter, the "'405 Patent"), was issued on December 23, 2008 after full and fair examination by the USPTO of Application No. 09/840,923 which was filed on April 25, 2001. *See* Ex. N. A Certificate of Correction was issued on July 13, 2010. *See id.*

81.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed and continues to infringe one or more claims of the '405 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its Aerohive HiveManager which provides for the ability of an administrator (through the HiveManager) to configure, maintain, and monitor multiple devices, essentially coordinating the control and data planes of the Aerohive cooperative control architecture. *See* **Exhibit R**.

82.     Upon information and belief, the Aerohive HiveManager meets each and every

element of at least Claim 1 of the '405 Patent, either literally or equivalently.

83.     Based upon public information, Defendant has infringed and continues to infringe one or more claims of the '405 Patent, including Claim 1, because it provides a method for scheduling the running of computer programs on multiple computers in coordinated manner, including by HiveManager's ability to update HiveManager images (including HiveManager software, HiveOS and HiveOS firmware, and Aerohive Switch Images) to multiple devices in the Aerohive cooperative control architecture.  Such coordinated manner and scheduling are handled by HiveManager's administrative management console and includes, among other combinations and options, upgrading HiveManager, HiveOS firmware, and then reloading HiveOS configurations to ensure compatibility with new HiveOS images on schedule.

84.     Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '405 Patent.  *See* Ex. R.

85.     Based upon public information, Defendant has intentionally induced and continues to induce infringement of one or more claims of the '405 Patent in this District and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Defendant's customers to use Aerohive HiveManager in an infringing manner.

86.     To the extent that Defendant is not the only direct infringer of one or more claims of the '405 Patent, it instructs its customers on how to use Aerohive HiveManager in ways that infringe one or more claims of the '405 Patent through its support and sales activities.  *See* Ex. G.

87.     Despite knowledge of the '405 Patent as early as the date of its receipt of the Notice Letter (Ex. E), Defendant, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes

one or more claims of the '405 Patent.  Based upon public information, the provision of and sale of Aerohive HiveManager is a source of revenue and a business focus for Defendant.  *See* Ex. R.

88.    Based upon public information, Defendant specifically intends its customers to use its products and services in such a way that infringes one or more claims of the '405 Patent by, at a minimum, providing and supporting Aerohive HiveManager and instructing its customers on how to use them in an infringing manner, at least through information available on Defendant's website including information brochures, promotional material, and contact information.  *See* Ex**.** R.

89.    Based upon public information, Defendant knew that its actions, including, but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using Aerohive HiveManager.

90.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

91.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 8,156,499

92.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

93.    U.S. Patent No. 8,156,499 (hereinafter, the "'499 Patent"), was issued on April 10, 2012 after full and fair examination by the USPTO of Application No. 12/331,980 which was filed on December 10, 2008.  *See* Ex. O.  A Certificate of Correction was issued on September 25, 2012. *See id.*

94.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed and continues to infringe one or more claims of the '499 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its Aerohive HiveManager which provides for the ability of an administrator (through the HiveManager) to configure, maintain, and monitor multiple devices, essentially coordinating the control and data planes of the Aerohive cooperative control architecture. *See* Ex. R.

95.     Upon information and belief, the Aerohive HiveManager meets each and every element of at least Claim 1 of the '499 Patent, either literally or equivalently.

96.     Based upon public information, Defendant has infringed and continues to infringe one or more claims of the '499 Patent, including Claim 1, because it provides a method for a scheduling computer to initiate the running of a computer program on another computer, the result of which triggers a program to run on a third computer that does not have the same operating system. including by HiveManager's ability to update HiveManager images (including HiveManager software, HiveOS and HiveOS firmware, and Aerohive Switch Images) to multiple devices in the Aerohive cooperative control architecture.  Such scheduling and initiation are handled by HiveManager's administrative management console and includes, among other combinations and options, upgrading HiveManager, HiveOS firmware, and then reloading HiveOS configurations to ensure compatibility with new HiveOS images on schedule.

97.     Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '499 Patent.  *See* Ex**.** R.

98.     Based upon public information, Defendant has intentionally induced and continues to induce infringement of one or more claims of the '499 Patent in this District and elsewhere in

the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Defendant's customers to use Aerohive HiveManager in an infringing manner.

99.     To the extent that Defendant is not the only direct infringer of one or more claims of the '499 Patent, it instructs its customers on how to use Aerohive HiveManager in ways that infringe one or more claims of the '499 Patent through its support and sales activities.  *See* Ex. G.

100.     Despite knowledge of the '499 Patent as early as the date of its receipt of the Notice Letter (Ex. E), Defendant, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes one or more claims of the '499 Patent.  Based upon public information, the provision of and sale of Aerohive HiveManager is a source of revenue and a business focus for Defendant.  *See* Ex. R.

101.     Based upon public information, Defendant specifically intends its customers to use its products and services in such a way that infringes one or more claims of the '499 Patent by, at a minimum, providing and supporting Aerohive HiveManager and instructing its customers on how to use them in an infringing manner, at least through information available on Defendant's website including information brochures, promotional material, and contact information.  *See* Ex. R.

102.     Based upon public information, Defendant knew that its actions, including, but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using Aerohive HiveManager.

54.103.          Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

55.104.	Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**JURY DEMAND**

56.105.	Plaintiff demands a trial by jury on all issues.

**PRAYER FOR RELIEF**

57.106.	Plaintiff respectfully requests the following relief:

A.	An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by Extreme;

B.	An adjudication that Extreme has induced infringement of one or more claims of the Patents-in-Suit based upon pre-suit knowledge of the Patents-in-Suit;

C.	An award of damages to be paid by Extreme adequate to compensate Plaintiff for Extreme's past infringement, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Extreme's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

D.	That this Court find that Defendant willfully infringed US Patent Nos. 7,398,298, 8,156,499, 7,469,405, and 7,139,780.

D.E.	That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

E.F.	Any further relief that this Court deems just and proper.

Dated: ~~June 5~~November 13, 2020          Respectfully submitted,

**Stamoulis & Weinblatt, LLC**

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. West Street Third Floor
Wilmington, Delaware 19801
Telephone: (302) 999-1540
Email: stamoulis@swdelaw.com
Email: weinblatt@swdelaw.com

**HENINGER GARRISON DAVIS, LLC**
James F. McDonough, III (Bar No. 117088, GA)*
Jonathan R. Miller (Bar No. 507179, GA)*
Travis E. Lynch (Bar No. 162373, GA)*
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869, -0863, -0867
Facsimile: (205) 547-5502, -5506, -5515
Email: jmcdonough@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com

*Attorney for Plaintiff DataCloud Technologies, LLC*

* admitted *pro hac vice*

**LIST OF EXHIBITS**

A.  U.S. Patent No. 6,560,613

B.  U.S. Patent No. 6,651,063

C.  U.S. Patent No. 8,370,457

D.  U.S. Patent No. 8,762,498

E.  Letter dated April 16, 2020 from DataCloud's Licensing Agent

F.  Webpage Describing Products Offered

G.  Webpage Describing Support for Products

H.  SLX Insight Architecture

I.  Data Sheet: Extreme Management Center

J.  Data Sheet: ExtremeSwitching™ X435 Series

K.  Data Sheet: ExtremeCloud™ (excerpt)

L.  U.S. Patent No. 7,139,780

M. U.S. Patent No. 7,398,298

N.  U.S. Patent No. 7,469,405

O.  U.S. Patent No. 8,156,499

P.  Webpage for Extreme Management Center

Q.  Webpage Describing Extreme Management Center Firmware

R.  Aerohive Deployment Guide

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

Dated: November 13, 2020                    /s/ Stamatios Stamoulis
                                            Stamatios Stamoulis #4606